## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PAM BEACH DIVISION

### CASE Nº 9:15-CV-81027-KAM

**GOVERNMENT EMPLOYEES**
**INSURANCE COMPANY**,
       Plaintiff,

v.

**FERNANDO JESUS**,
**ROSEANGELA JESUS**, and
**MEGHAN MCCAUL**,
       Defendants.

## DEFENDANT, MEGHAN McCAUL'S
## MOTION FOR FINAL SUMMARY JUDGMENT

**DEFENDANT**, Meghan McCaul ("Meghan") asks that the Court enter final summary judgment in her favor and against Plaintiff, Government Employees Insurance Company's ("GEICO") and says:

### Statement of the Case.

This is a declaratory judgment action whereby GEICO seeks to avoid liability under a Family Automobile Insurance Policy, [DE 26, p. 9], for damages caused by Meghan McCaul in an auto accident, on the grounds that Meghan did not reside at her mother's household at the time of the accident.  [DE 19, p. 5].  A Statement of Material Facts to Which no Genuine Triable Issue Exists in Support of this Motion for Summary Judgment is attached hereto as *Exhibit "1"*.

### Choice of Law.

A federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313

U.S. 487, 495–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941).

The instant action calls for the Court to interpret an insurance policy bought by and issued to an Oklahoma insured in Oklahoma.  In determining the controlling law, Florida applies the "the rule of lex loci contractus . . . [t]hat rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm v. Roach*, 945 So. 2d 1160, 1164 (Fla. 2006).  Since the contract of insurance was executed in Oklahoma, Oklahoma law applies.[1]

**Summary Judgment Generally.**

Summary judgment shall be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986) (internal citation omitted). The basic issue before the court on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

> **ISSUE I.** **Whether as a matter of law, for auto insurance purposes, unemancipated minors of divorced parents have dual residency at both parents' homes under Oklahoma law.**

---

[1] GEICO agrees that Oklahoma law applies. [DE 50-1]

**Oklahoma Law.**

Whether an unemancipated minor child of divorced parents may have dual residences and reside at both parents' homes is a question of first impression under Oklahoma law. *Shelter Mutual v. American Hallmark Ins.*, 330 P.3d 1229, 1234 (Ok. Civ. App. 2014). In *Shelter*, Faulkner, a minor, was involved in an auto accident. *Id.*, at 1230. He was driving a vehicle owned by Herweck and insured by Shelter Insurance. *Id.*, at 1231. Herweck and Faulkner were not related but lived together. *Id.* Faulkner's mother, Cottrell had custody of Faulkner. Boyd lived with her granddaughter, Cottrell. *Id.* Boyd had auto insurance that provided coverage to relatives that were residents of her household. *Id.* Shelter argued that since Faulkner was a minor and his mother, Cottrell, had custody of him pursuant to a divorce decree, Faulkner resided with Cottrell. Shelter then argued that since Faulkner resided with Cottrell, and Boyd resided with Cottrell, it necessarily followed that there was insurance available to Faulkner under Boyd's auto policy because Faulkner was a relative residing in Boyd's household. Shelter cited *Williams*, *supra.*, in support of this proposition. The trial court disagreed, finding that while Faulkner may have legally been a resident of his mother's household, he was not a resident of his great-grandmother, Boyd's, household (although Boyd had moved in with Cottrell this did not constitute the household as Boyd's household). It is noteworthy that when viewing the facts in the light most favorable to the nonmovant (Shelter), the trial court found that Faulkner was a resident of his mother's (Cottrell's) household even though Faulkner was not spending the night at Cottrell's house and he was spending the night at Herwick's household and paying rent there.

On appeal, the *Shelter* Court found that Faulkner did not reside under his great-grandmother's roof at the time of the accident and, since he did not, he was not a resident of her household. *Id*., at 1233. In reaching this decision, the *Shelter* court found that "[w]hile other

3

jurisdictions have recognized the possibility of dual residency for unemancipated minor children of divorced parents in the context of insurance coverage, this state has not done so. *See Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005 (Miss. 1993); *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655 (Mo.App.1987); *Ohio Cas. Ins. Co. v. Estate of Wittkopp*, 326 N.J.Super. 407, 741 A.2d 619 (N.J.Super.A.D.1999)." *Id.*, at 1234.

The *Shelter* court also found that the case before it was not a dual residency case and distinguished dual-residency cases finding that "[n]otebly, each of these decisions determined whether the minor children could be residents of both the custodial parent and non-custodial parent's home when the child primarily resided with the custodial parent but the non-custodial parent exercised visitation." *Id.*, at 1234. Finally, while it did not need to, the *Shelter* Court was quick to point out that '[w]e do not foreclose the possibility that unemancipated minors with divorced parents may maintain a residence at both parents' homes under Oklahoma law, but that is not the issue before this Court." *Id.*, at 1234.

The issue in this case is the one noted by, but not addressed by, the *Shelter* Court: Whether, for auto insurance purposes, an unemancipated minor child of divorced parents may maintain a residence at both parents' homes under Oklahoma law. Since the issue raised by this case is one of first impression, the Court must make an "Erie Guess" as how the Oklahoma Supreme Court would hold should the question be posed to them. *See Putman v. Erie City Manuf.*, 338 F.2d 911, 917-918 (5th Cir. 1964).

Under Oklahoma law, the domicile of a child of divorced parents is with the parent having custody. *Grubbs v. Hunter*, 573 P.2d 699 (Ok. 1977). But, this does not resolve the issue before the Court because, as our Supreme Court tells us, residency and domicile are not the same, and one may be a resident of one place and domiciled in another. *See Mississippi Band of Choctaw*

*Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (person can reside at one place but be domiciled at another).  Of course, this makes perfect sense because domicile and residency are distinguishable – residency is a temporary place of dwelling while a domicile is a fixed place of habitation, one's home.[2]  *See  Aetna v. Williams*, 623 So. 2d 1005, 1010 (Miss. 1993).

In *Williams*, Junior Williams, an unemancipated minor of divorced parents, was killed in an auto accident.  *Id.*, at 1006.  Junior's father made a claim against his insurer alleging that Junior was a resident of his home at that time of the accident.  *Id.*  Junior's mother, who had legal custody, made a claim against her insurer alleging that Junior resided in her home.  *Id.*, at 1007.  The policy in question contained language similar to that in this case:

> II.    PERSONS INSURED
>
> Each of the following is an insured under this insurance
> to the extent set forth below:
>
> (a)    the named insured and, *while residents of the same household*, the spouse
>        and relatives of either. (Emphasis added).

*Id.*, at 1006.

Junior had bedrooms at both of his parents' homes, spent most his time at the custodial parent's home but also spent time at the noncustodial home.  *Id.*, at 1007. The non-custodial parent helped with his expenses, and provided him with a car.  *Id.*, at 1008.  On these facts, the trial court found that there was insurance coverage under both parents' policies because the parties' divorce decree did not terminate either's parental rights, duties or obligations, there was evidence that Junior maintained two residences, and the policy language did not preclude coverage to persons

---

[2] resident n. (15c)  1. Someone who lives in a particular place. 2. Someone who has a home in a particular place. • In sense 2, a resident is not necessarily either a citizen or a domiciliary. Cf. CITIZEN (1); DOMICILIARY, n.  *See* Black's Law Dictionary, 10th ed. 2014.

with multiple residences.  *Id.*, at 1007.

The insurer appealed.  The issue on appeal was whether a minor child of divorced parents may, for purposes of auto insurance, be considered a resident of each parents' home.[3]  *Id.*  While the insurer argued that the fact that both parents still had all parental rights and obligations was immaterial and the divorce custody order was all that mattered, the *Williams* Court disagreed. *Id.*, at 1008.  The court found that while the policy did not say so, the insurer "desires that we equate the term 'residence' with the term 'domicile' ", *id.*, at 1009, and that while "the law is clear that a person can have but one domicile", *id.*, "[r]esidence is an entirely different and more flexible concept."  *Id.*, at 1009.  The court further found that "a person may have multiple residences simultaneously … [and] a dwelling place need not be fixed and permanent in order to qualify as a residence . . .  [e]ven a temporary and transient habitation can qualify . . . [and] [t]o merge these two concepts would constitute an abrupt departure from prior caselaw in most jurisdictions, including ours."  *Id.*, at 1010.  Continuing in that vein, the *Williams'* Court found that "[a] more narrow construction of 'residence' would bear no resemblance to the term's commonly accepted meaning . . . [because] the term 'residence' imports merely having abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present."  *Id.*, at 1010.

The *Williams'* Court recognized that "[o]ther jurisdictions are split as to whether a child of divorced or separated parents continues to be a 'resident' of both parents' households . . . [but that] [n]umerous courts have found that a minor child may be considered a member or resident of a non-

---

[3] While *Williams* was an uninsured motorist case, the rule announced in *Williams* applies equally to auto liability cases.  *See Plunkett v. State Farm*, 347 Fed. Appx. 994, 996 (5th Cir. 2009); *Grange Mutual v. USF&G*, 853 So. 2d 1187 (Miss. 2003).

custodial parent's household" and that this rule is the better approach. *Id.*

Finally, the *Williams* Court found that "[a] minor is legally unable to establish a residence separate and apart from his or her parents [and merely] [b]ecause a child's parents are unable to live together or because custody is granted to one parent, the other party's parental rights are not extinguished . . . [a] non-custodial parent is just as much a 'parent' as a custodial parent and the child is still a member of the non-custodial parent's family [and] [c]onsequently, the child is still a 'resident' in the household of the non-custodial parent." *Id.*, at 1010-1011.

Pulling all of these findings together, the *Williams'* Court held "that a child is a resident of both parents' households until he or she reaches the age of majority or becomes fully emancipated."

Many of the concerns voiced by the Mississippi Supreme Court in *Williams* are shared by the State of Oklahoma.  Like Mississippi, Oklahoma has long recognized that "parents are, under our statutes, the natural guardians of the persons of their minor children, and this was true at common law . . . [a]s such natural guardians, the parents ordinarily have the right to the custody, control, care, services and earnings of their children[and] [i]t is their duty to support and educate their children and they are liable to third persons for necessities furnished their children when they neglect to provide the children with necessities . . .." *In re Guardianship of Hight*, 148 P.2d 475, 480 (Ok. 1944) (internal citation omitted).

Like Mississippi, awarding custody to one parent Oklahoma does not strip the other parent of their parental rights, both parents retain their parental rights until a court finds otherwise *In re Guardianship of Hight*, 148 P.2d at 480 (holding that "when a parent who has the custody of minor children dies, the other parent becomes entitled to its custody . . . [a]nd this rule applies where the parent to whom the custody of minor children has been committed in a divorce action dies") (internal citation omitted).

Like Mississippi, an Oklahoma unemancipated minor may not enter into insurance contracts, appoint agents or choose their domicile. *See State Farm v. Schwartz*, 933 F.2d 848 (10th Cir. 1991) ("It is highly unlikely that household members such as minor, unemancipated children will have consented, or are legally able to consent, to the terms of the insurance contract.) (Footnote omitted); *Wagnon v. Carter*, 539 P.2d 735, 740 (Ok. 1975) (minor may not appoint agent any any attempt to do so is void); *Grubbs v. Hunter*, 573 P.2d 699, 702 (Ok. 1977) (minor's domicile is with parent having legal custody and if there is no formal custody decree, at place of father's domicile).

Further, Oklahoma law encourages the continuation of the parental / child relationship after a divorce:

C. 1.   When it is in the best interests of a minor unmarried child, the court shall:

      a.   assure children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and

      b.   encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.

2.   There shall be neither a legal preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody.

3.   When in the best interests of the child, custody shall be awarded in a way which assures the frequent and continuing contact of the child with both parents. When awarding custody to either parent, the court:

      a.   shall consider, among other facts, which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent, and

      b.   shall not prefer a parent as a custodian of the child because of the gender of that parent.

43 Okl. Stat. Ann. § 112(C)

Finally, under Oklahoma law, the term "custody," for purposes of an auto policy, is not

synonymous with the term "resident."[4]  *Shelter Mutual v. American Hallmark Ins.*, 330 P.3d 1229, 1234 (Ok. Civ. App. 2014).

Pursuant to GEICO's policy, Meghan has coverage under the policy if she "resides" in her mother's household.  Like Aetna did in the *Williams* case, GEICO seeks to equate the term "resides" with "domicile" or permanent residency or parental custody.  As the *Williams* Court tells us, one should not read terms that are not present into an insurance policy, nor should a court interpret an auto policy so narrowly.

Finally, Meghan McCaul submits that given the "we do not foreclose the possibility that unemancipated minors with divorced parents may maintain a residence at both parents' homes under Oklahoma law" language found in *Shelter*, as well as the *Shelter* Court's citation to *Williams*, it is a good Erie Guess that the Oklahoma Supreme Court would adopt the reasoning of *Williams* and find as a matter of law that for auto insurance purposes, Meghan as an unemancipated minor child of divorced parents, maintains a residence at both her parents' homes and, as such, is an "insured" under the Family Automobile Insurance Policy issued by GEICO to her mother, Ms. Davison.[5]

       **ISSUE II.**      **Whether the term "resides" as used in the GEICO policy is vague and ambiguous and therefore as a matter of law there is coverage for the loss.**

---

[4] Oklahoma's Supreme Court has found that for purposes of auto insurance the term "residence emphasizes membership in a group rather than an attachment to a building."  *Henderson v. Eaves*, 516 P.2d 270, 274 (Ok. 1973).

[5] Ms. McCaul previously asked the Court to submit a certified question on this issue to the Oklahoma Supreme Court, [DE 50], and respectfully submits that if the Court has any reservation in applying the Williams rule, it should submit the issue to the Oklahoma Supreme Court for resolution.

**Oklahoma Law.**

Vague, ambiguous policy terms must be interpreted against the insurer and in favor of coverage.   *Haworth v. Jantzen*, 172 P.3d 193 (Ok. 2006).   If the insurance policy language is doubtful and susceptible to two constructions then a genuine ambiguity exists. *Dodson v. St. Paul Ins. Co.,* 812 P.2d 372 (1991).   The United States District Court, N.D. Oklahoma, has decided as a matter of law that the term "regularly resides" is ambiguous as it is susceptible to more than one reasonable interpretation. *Foremost Ins. Co. v. Estate of York,* No.11-CV-0433-CVE-PJC, 2012 WL 2887226 (N.D. Okla. July 13, 2012).

**Florida Law.**

Where the policy is ambiguous, there is, as a matter of law, coverage for the loss. *Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039-CIV, 2011 WL 146837 (S.D. Fla. 2011) (in dec action brought by insurer "in the event that the Court determines the policy language is ambiguous, Defendants will automatically prevail in the instant declaratory action.").   GEICO asserted this case as controlling in its motion for protective order regarding the corporate representative's deposition. [DE 42, p. 3].

In the context of this case, a seventeen-year-old unemancipated minor child of divorced parents, who was driving a non-owned vehicle, and whose parents both retained all parental rights and obligations, a reasonable person could understand the term "resides" to mean a number of different things.   Reasonable people could conclude the term "resides" means "permanently resides" or "temporarily resides" or "primarily resides" or "continuously resides" or "regularly resides".   Divorced parents of minor children could reasonably conclude it means the place of "custodial residency" pursuant to the custodial arrangement ordered in the divorce decree.   Not only could reasonable people, who are not attorneys, conclude the term "resides" is susceptible to

10

more than one meaningful interpretation or definition, so could others.

GEICO's own witnesses agree with Meghan that the term "reside" as used in the subject policy is subject to more than one meaningful interpretation.  Christopher Smith, the underwriter designated to testify as to coverage and policy history, [DE 12, p. 2], was deposed on April 28, 2016, and he testified that reasonable people can define the policy's term "reside" differently:

> Q.    Do you agree the term "reside" in this policy is subject to more than one interpretation by reasonable people?
>
> A.    Sure.
>
> Q.    Do you agree the term "reside" in this policy is subject to more than one interpretation by reasonable people?  And the example I'll give you is temporarily resides or permanently resides.
>
> A.    I think I can agree with that.
>
> P 66 L 19 – P 67 L 4.  *Exhibit 2*

He also said that the policy's "residence" term is vague, and that he, a GEICO underwriter, doesn't know how GEICO defines that term:

> Q.    So, someone can come in, read this policy, and say, what does "residence" mean; I don't know, let's look it up.  It doesn't define it.  One is left to wonder what the term "residence" means in the context of this insurance policy, do you agree with that?
>
> A.    I understand your point, yeah.  Yes.
>
> Q.    Alright.  So do you agree it's vague in that context?
>
> A.    I can agree with that.
>
> Q.    Alright.  Thank you.  Do you know how GEICO defines the term "residence"?
>
> A.    No.

P 43 L 25 – P 44 L 17.  *Exhibit 2*

Finally, Mr. Smith agreed that Meghan should be considered a resident of each of her

parents' households:

> Q.     If an unemancipated minor child of divorced parents spends
>        days and nights with each parent at the different addresses,
>        and has the intention to continue to visit and stay with each
>        parent, is the minor child of a resident of each parents'
>        household, in GEICO's view?
>
> A.     Excuse me.  I believe we would consider them as - - uh - -
>        residents of each . . .

P 61 L 13-21.  *Exhibit 2*

GEICO treats 'resident' differently than its common every day meaning when they gave

'resident' a special meaning, to wit: "Relative means a person who resides in your household."

[DE 26].  It is axiomatic that one is a resident of the place in which they reside.  GEICO drafted

the subject policy.  If GEICO wanted the term "resides" limited, it was free to qualify the term

with limiting language, *i.e.*, "permanently resides" or other such language.  GEICO could have

described the requirements for residency or, better yet, they could have described the requirements

for residency of unemancipated minors of divorced parents.  Similarly, GEICO could have

provided a definition of the term "resides" so that all who read the policy will know what the term

means and it would not be subject to different meanings to reasonable people.  GEICO did not do

so and, since it didn't, on the facts of this case, the term is susceptible of different meanings, *i.e.*,

permanently resides, temporarily resides, primarily resides, exclusively resides, custodially

resides, dual residency, transient residency, domicile, etc.

Meghan submits the term "regularly resides" is more narrow in meaning than the term

"resides".  Since we know the narrower term "regularly resides" is ambiguous as a matter of law

(*Foremost Ins. Co. v. Estate of York,* No.11-CV-0433-CVE-PJC, 2012 WL 2887226 (N.D. Okla.

July 13, 2012)), then it must follow that the term "resides" is also ambiguous, since it is a broader term. On the facts of this case, the term "resides" is ambiguous and, as a matter of law, Meghan automatically prevails in this declaratory judgment action. *Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039-CIV, 2011 WL 146837 (S.D. Fla. 2011).

If the Court finds the term "resides" to be clear and unambiguous, Meghan respectfully submits that under the dual residency rule announced in *Williams* she was a resident of both of her parents' homes and thus she prevails in this declaratory judgment action.

>            **ISSUE III.    Whether Meghan is covered for the loss as she was a relative of the named insured who resided in the named insured household and was driving a non-owned auto at the time of the subject accident.**

The undisputed facts are that: at the time of the accident in question, Meghan was a seventeen year-old unemancipated minor child of divorced parents who spent days and nights with each parent at their respective addresses, and had the intention to continue to visit and stay with each parent. Her natural mother was Victoria Davison, thus making Meghan a relative of Ms. Davison, the named insured. *Exhibits 3 & 4.*

Meghan was driving a non-owned auto at the time of the subject accident. The auto was not owned by Meghan nor was it owned by the named insured, Ms. Davison. The auto was owned by Mr. McCaul, who was not a relative of Ms. Davison, nor did he ever reside in Oklahoma at any time with Ms. Davison. *Exhibits 3 & 4.*

Despite their divorce, Meghan's parents shared parental and financial responsibility, both parents maintained a residence for Meghan in their respective households, Meghan was free to travel between her parents' respective households and Meghan was never barred from either parents' household. *Exhibits 3 & 4.*

Further, Meghan's mother kept a room for Meghan at her residence in Oklahoma. It was

decorated with Meghan's things that her mother moved from Hawaii to Oklahoma. Meghan's room at her mother's house had Meghan's dresser, her mirror, her bed and bedding, which was girly. Meghan's room had pink decorations, her teddy bears and her princess drawings. She was always a part of her mother's family and household and she resided at her mother's house when she was there. The first call she made after the accident was to her mother. *Exhibit 4.*

**Public Policy.**

Public policy supports finding Meghan a resident of each of her parents' households – it is the policy of the State of Oklahoma to "assure children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and [to] encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." 43 Okl. Stat. Ann. § 112(C).

Moreover, while one may be the custodial parent, under Oklahoma law, both parents retain their parental rights and obligations vis-à-vis Meghan: The natural parents are "the natural guardians of the persons of their minor children, and . . . [i]t is their duty to support and educate their children and they are liable to third persons for necessities furnished their children when they neglect to provide the children with necessities . . .." *In re Guardianship of Hight*, 148 P.2d at 480.

As we learn from the *Shelter* Court's dicta, a minor is legally unable to establish a residence separate and apart from his or her parents, or legally enter into a binding contract for insurance. Moreover, parental rights and responsibilities are not extinguished simply because the parents are divorced.

Divorced parents often times choose to move to different states. Unemancipated children of such parents are subject to factors such as this being imposed upon them, as well as custodial

decrees that do not provide for the time spent with each parent to be exactly equal. This, however, in no way changes the fact that the child remains the natural child of each parent and is part of each parent's family. Children of divorced parents cannot physically be in two places at once, but they can remain a part of each parent's family and household at once as a dual resident of each. To punish children whose parents move to different states, while rewarding children (with coverage) who may have more contact with each parent because their parents did not move to separate states, is manifestly unjust when it is through no fault nor action of the unemancipated child that leads to that result.

Further, it is easy to imagine a situation where a non-custodial parent has a greater ability to purchase more insurance and provide their child with greater coverage than the custodial parent. If the child was deemed to not "reside" with the non-custodial parent, the custodial parent, as well as the minor child, would have the burden of paying for injuries either suffered by the child or caused by the child. The plaintiffs in the underlying tort action, the Jesus', sustained severe injuries. *See Deposition of Michael Camden, the GEICO adjuster ("Mr. Camden"), Exhibit 5, (P 37 L 16 – 24).*

Meghan was an unemancipated minor child temporarily living in a college dorm -- Should a minor child lose their auto insurance merely because they attend a boarding school or college? Public policy mandates that the child be considered a resident of each parent's household until the age of majority in order ensure minor children are not financially devastated and to provide protection for the motoring public.

Numerous jurisdictions look to the family unit rather than the physical address to determine residency. This is because the state wishes to encourage a minor child of divorced parents to be a member of each parent's family even though the child cannot physically live in each house at the

same time.  This is also why the case law in the various jurisdictions distinguishes the term "domicile" – which a person can only have one of – with the term "residence," which the person can have more than one of.

There are numerous public policy considerations that mandate that an unemancipated minor child of divorced parents is a resident of both parents' households.  Meghan has shown, through the admissible facts that are not in dispute and by virtue of her status as an unemancipated minor of divorced parents, that she was a resident of her mother's household.  As such, coverage should afforded under the facts of this case.

**Conclusion.**

For the foregoing reasons, Defendant, Meghan McCaul asks that the Court take jurisdiction of this matter and enter final judgment in her favor declaring that:

- Issue I:  Meghan McCaul, as an unemancipated minor of divorced parents, has dual residency with both Victoria Davison and Brian McCaul, her natural parents, as a matter of law.

- Issue II:  The term "resides" as used in the GEICO policy is vague and ambiguous as it is susceptible to more than one meaningful interpretation to reasonable people.

- Issue III:  The undisputed material facts show Meghan McCaul was an unemancipated minor of divorced parents who was driving a non-owned auto at the time of the accident.  Her mother maintained a room for her at her residence and kept personal possessions of Meghan in it.  Meghan visited her mother even though her parents were in different states.  She always remained a part of her mother's family and she resided there when she was there.

- Meghan is an "insured" under the Family Automobile Insurance Policy issued by GEICO to her mother, Ms. Davison.

- GEICO owes Meghan McCaul insurance coverage under the Policy for the claims made against her by Fernando Jesus and Roseangela Jesus;

- GEICO, pursuant to § 627.426, Fla. Stat., is responsible for the reasonable attorney's fees incurred by Meghan McCaul in defending this declaratory judgment action;

- GEICO is responsible for the legal costs incurred by Ms. McCaul in defending this declaratory judgment action; and

- Awarding any other relief that the Court deems appropriate on the facts of this case.

### CERTIFICATE OF SERVICE

**I CERTIFY** that on **June 13, 2016**, I electronically filed the foregoing document.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

WADSWORTH HUOTT, LLP
Attorneys for Defendants
14 NE 1st Avenue, 10th Floor
Miami, FL  33132
(305) 777-1000 Telephone
(305) 777-1001 Facsimile

By:      */S/ Daniel L. Margrey*_____
Daniel L. Margrey
Florida Bar No. 119301
E-Mail: gm@wadsworth-law.com
Christopher W. Wadsworth
Florida Bar No. 78026
E-Mail: cw@wadsworth-law.com

17

SERVICE LIST

GEICO v. Jesus & McCaul

Case Nº 9:15-CV-81027-KAM
United States District Court, Southern District of Florida

Bart Cozad, Esq.
E-mail: bcozad@derreverelaw.com
Derrevere, Hawkes, Black & Cozad
2005 Vista Parkway, Suite 210
West Palm Beach, Florida 33411
Phone: (561) 684-3222
*Attorney for Plaintiff, Geico*

Arvid J. Peterson, III, Esq.
E-mail: ajpistolpete@bellsouth.net
Law Offices of Srvid J. Peterson III
370 Camino Gardens Blvd.,  327
Boca Raton, Florida 33432
Phone: (561) 394-9228
*Attorney for Defendants, Fernando Jesus and
Roseangela Jesus*