UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:15-CV-81027-KAM

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

    Plaintiff,

vs.

FERNANDO JESUS, et al.,

    Defendant.

_____/

## ORDER

This matter is before the Court on Defendant Meghan McCaul's Motion to Certify Question of Law (DE 50). For the following reasons the motion is granted.

### I. Background

On September 14, 2013, Defendant Meghan McCaul was involved in an auto accident with Defendants Fernando and Roseangela Jesus in Boca Raton, Florida. At the time, McCaul was 17 years old and a permissive user of her father's car. The Jesuses sued McCaul and her father in state court for personal injuries arising from the accident.

McCaul's parents are divorced. An April 3, 2012 court order granted McCaul's parents shared parental responsibility but required that McCaul "reside permanently and primarily with her father." (DE 54 at 3 ¶ 2; DE 54-2 ¶¶ 9–10; DE 59 at 2 ¶ 2.) At the time of the accident, McCaul was primarily living in a dormitory at Florida Atlantic University ("FAU"). Before living at the FAU dormitory, McCaul primarily lived with her father in Florida. McCaul's mother, Victoria Davison, lives in Oklahoma and lived in Oklahoma at the time of the accident.

1

Plaintiff Government Employees Insurance Company ("GEICO") issued an auto insurance policy to Davison for the period April 21, 2013 through October 21, 2013. The policy provides liability coverage for bodily injury arising out of the use of a "non-owned auto" by a "relative" of the named insured. (DE 1 ¶ 21.) The policy defines "relative" as "a person related to you who resides in your household." (DE 1 ¶ 21.) The policy does not define the terms "resides" or "household."

After the Jesuses made a demand to GEICO for the limits of Davison's policy, GEICO filed this declaratory judgment suit against McCaul and the Jesuses. GEICO seeks a declaration that it has no duty to defend or indemnify McCaul for any claims arising out of the accident. According to GEICO, McCaul was not Davison's "relative" as defined in the policy because she did not reside in Davison's household. The primary issue in this case is thus whether during the policy period McCaul resided in Davison's household.

In the instant motion, McCaul requests that the Court certify the following question of law to the Oklahoma Supreme Court: "Whether unemancipated minors with divorced parents have dual residency at both parents' homes as a matter of law in the context of insurance coverage?" (DE 50 at 10.) GEICO and McCaul have also both moved for summary judgment and agree that Oklahoma law governs the interpretation of the policy. A review of the motions makes clear that an answer to the proposed question (as rephrased below) may be dispositive of the primary issue in this case.

## II. Discussion

### A. The Court May Certify Questions of Law to the Supreme Court of Oklahoma

Federal courts may certify questions of state law to a state court where a certification procedure is available. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974). Doubt as to state law when a certification procedure is available does not render certification "obligatory," but

certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Id.* Indeed, "[s]tate certification procedures are a very desirable means by which a federal court may ascertain an undecided point of state law, especially where . . . the question can be certified directly to the court of last resort within the State." *Id.* at 394 (Rehnquist, J., concurring).

A certification procedure is available here. Oklahoma law empowers the Supreme Court of Oklahoma to "answer a question of law certified to it *by a court of the United States* . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state." Okla. Stat. tit. 20, § 1602 (emphasis added). This plain language makes clear that the Supreme Court of Oklahoma may answer questions certified by "any federal court." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007), *certified question answered*, 183 P.3d 1001 (Okla. 2008).

In fact, courts at all levels of the federal judiciary have certified questions to the Supreme Court of Oklahoma. *E.g.*, *Cline v. Okla. Coal. for Reprod. Justice*, 133 S. Ct. 2887, 2887 (U.S.) *certified question answered*, 313 P.3d 253 (Okla. 2013) (per curiam); *Howard v. Zimmer, Inc.*, 711 F.3d 1148, 1153 (10th Cir. 2012), *certified question answered*, 299 P.3d 463 (Okla. 2013); *McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp.*, No. 07-CV-0314-CVEPJC, 2008 WL 199895, at *10 (N.D. Okla. Jan. 22, 2008), *certified question answered*, 195 P.3d 35 (Okla. 2008). And in other cases GEICO itself has successfully moved for a federal district court to certify questions to the Supreme Court of Oklahoma. *Gov't Emps.' Ins. Co. v. Quine*, No. Civ-08-1140-C, slip. op. at 1 (W.D. Okla. Sept. 25, 2009) (ECF No. 95) (granting GEICO's motion to certify),

*certified questions answered*, 264 P.3d 1245 (Okla. 2011).

Nevertheless, GEICO argues that this Court lacks authority to certify questions to the Supreme Court of Oklahoma. GEICO argues that the Court must follow Florida procedural law because a federal court sitting in diversity must apply the forum state's conflict-of-laws rules and Florida's conflict-of-laws rules provide that procedural matters are governed by Florida law even when another state's substantive law applies. (DE 52 at 2.) Certification, GEICO continues, is a procedural matter and thus the Court is constrained by Florida law, which "does not confer jurisdiction upon this court to certify questions directly to the Florida Supreme Court." (DE 52 at 2.)

GEICO also argues that certification would violate Federal Rule of Civil Procedure 82, which states that the Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts." GEICO contends that the Oklahoma statute empowering the Supreme Court of Oklahoma to answer certified questions from federal district courts conflicts with this federal rule. According to GEICO, Rule 82 "confirms the limits of this court's jurisdiction as prescribed by the Florida Constitution" so the Oklahoma statute "cannot usurp or expand the Florida Constitution or the controlling Federal Rule of Procedure 82." (DE 52 at 3.)

GEICO's arguments are rejected. This Court's jurisdiction derives from the *federal* Constitution and *federal* statutes, not the Florida constitution or any other state law. Any notion that under federal law the Court lacks authority to take advantage of a state's certification procedure is incorrect given that the Supreme Court has endorsed the use of state certification procedures by federal courts, *Schein*, 416 U.S. at 390–91, has itself used the Oklahoma certification procedure at issue here, *Cline*, 133 S. Ct. at 2887, and has held in at least one circumstance that it was error for a district court to *not* certify a question to a state high court when a certification procedure was

4

available. *Bellotti v. Baird*, 428 U.S. 132, 151 (1976).

Moreover, the fact that Florida law does not make its procedure for certifying questions *to the Florida Supreme Court* available to federal district courts is irrelevant to the Court's ability to certify questions *to the Supreme Court of Oklahoma*. The Florida constitution limits *the Florida Supreme Court's* jurisdiction to answer certified question from this court; it has no effect on this Court's jurisdiction at all. Also, even assuming *arguendo* that Florida law could affect the Court's ability to certify questions to a non-Florida court, GEICO cites no such provision of Florida law.

Furthermore, nothing in Rule 82 supports GEICO's argument or conflicts with Oklahoma's statute on certified questions. Rule 82 does not somehow reverse incorporate a forum state's highest court's jurisdictional limits to *answer* a certified question by limiting a federal court's power to *ask* a certified question to the highest court of another state. And it is unclear how Rule 82 could "confirm the limits of this court's jurisdiction" at all, as GEICO contends, if the rule specifically states that the Federal Rules of Civil Procedure "do not extend *or limit* the jurisdiction of the district courts." Fed. R. Civ. P. 82 (emphasis added).

GEICO's attempt to somehow connect Rule 82, the Florida constitution's restriction on the Florida Supreme Court's jurisdiction to answer certain certified questions, and an Oklahoma statute's empowerment of the Supreme Court of Oklahoma to answer certified questions is rejected. Only one of these—the Oklahoma statute—has any bearing on this Court's decision to certify a question to the Supreme Court of Oklahoma.

**B. Certification is Appropriate in this Case**

Turning to whether certification is appropriate in this case, the Court looks to both federal and state law. Under federal law, the use of a state's certification procedure "in a given case rests in

5

the sound discretion of the federal court." *Schein*, 416 U.S. at 391. Certification is "particularly appropriate" where the question is novel, there is great unsettlement in the state law, and the state whose law applies is distant. Indeed, when federal judges in one state attempt to predict uncertain law of a distant state, they act "as 'outsiders' lacking the common exposure to local law which comes from sitting in the jurisdiction." *Id.*

The court also looks to state law to determine whether certification is appropriate because state law determines the scope of the state court's power to answer the certified question. Under Oklahoma law, the Supreme Court of Oklahoma may answer a question of law certified by this Court if (1) "the answer may be determinative of an issue in pending litigation" and (2) "there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state." Okla. Stat. tit. 20, § 1602.

The issue before the court presents novel questions of state law. While determinations of residency are generally fact-specific, the context of an unemancipated minor is unique. Jurisdictions are split on whether unemancipated minors with divorced parents are *per se* considered to reside in both parents' households within the meaning of an insurance policy. *Compare Aetna Cas. & Sur. Co. v. Williams*, 623 So. 2d 1005, 1011 (Miss. 1993) ("We hold, therefore, that a child is a resident of both parents' households until he or she reaches the age of majority or becomes fully emancipated.");[1] *Davis Through Davis v. Hartford Ins. Co. of Ill.*, 456 So. 2d 302, 305 (Ala. 1984) (applying Illinois law) ("Moreover, from that evidence, it is clear that Mack III is a resident of his

---

[1] Although *Williams* involved facts that arguably could have independently proven residency with both parents, the court stated its holding as a *per se* rule and it has been treated as such. *See Plunkett v. State Farm Mut. Auto. Ins. Co.*, 347 F. App'x 994, 995–96 (5th Cir. 2009) (applying Mississippi law); *Grange Mut. Cas. Co. v. U.S. Fid. & Guar. Co.*, 853 So. 2d 1187, 1190 (Miss. 2003).

mother's home in Bessemer, not his father's home in Rockford, Illinois."). State public policy and principles of state family law may inform courts' decisions to carve out a *per se* rule for unemancipated minors with divorced parents. *See generally Williams*, 623 So. 2d at 1008–11.

Oklahoma law has yet to take a position on this issue. There is no controlling decision of the Supreme Court of Oklahoma (nor the Oklahoma Court of Criminal Appeals) on whether an unemancipated minor with divorced parents is *per se* considered to reside in both parents' households under Oklahoma law. Nor have the Court or parties located any authority on this issue from Oklahoma's intermediate appellate court. Indeed, the absence of authority on this issue was recognized by an Oklahoma appellate court in *Shelter Mutual Insurance Co. v. American Hallmark Insurance Co. of Texas*, 330 P.3d 1229 (Okla. Civ. App. 2014). In *Shelter*, the court noted, "While other jurisdictions have recognized the possibility of dual residency for unemancipated minor children of divorced parents in the context of insurance coverage, this state has not done so." *Id.* at 1234. The court explained that it did "not foreclose the possibility that unemancipated minors with divorced parents may maintain a residence at both parents' homes under Oklahoma law, but that is not the issue before this Court." *Id.*

In this case, whether an unemancipated minor with divorced parents is *per se* considered to reside in both parents' households under Oklahoma law may be determinative of an issue in this case. GEICO seeks a declaration that it does not have a duty to defend or indemnify McCaul based on its position that McCaul is not Davison's "relative" as that term is defined in the policy. The policy's definition of "relative," in turn, requires that the purported relative reside in the named insured's household. If an unemancipated minor with divorced parents—as McCaul was at the time of the accident—is *per se* considered to reside in both parents' households under Oklahoma law,

then McCaul is a "relative" of Davison as a matter of law and GEICO's asserted basis for denying coverage is wrong. Accordingly, certification of the proposed question, as modified below, is appropriate.

The Court also finds it appropriate to ask a second certified question. If Oklahoma law does not recognize a *per se* rule, a new determinative question is presented as to what circumstances, if any, allow for a determination that an unemancipated minor child of divorced parents resides in both parents' households. There are three possible answers to this question. The first possibility is that Oklahoma law does not allow any person, including a minor, to be considered to reside in more than one household. The second possibility is that Oklahoma law allows an unemancipated minor with divorced parents to be considered to reside in both parents' households (either because it allows for all people to be considered to reside in more than one household or because it recognizes an exception for unemancipated minors) and that the determination is subject to the same standard that generally applies when determining whether one resides in a household under Oklahoma law. The last possibility is that Oklahoma law allows an unemancipated minor with divorced parents to be considered to reside in both parents' households and that, while not a *per se* standard, some distinct standard applies to this unique context. Any of these answers would be determinative of the primary issue in this case.

Many states to address the issue, in the context of policy language similar to the language at issue here, recognize that any person, minor or adult, may be considered a resident of more than one household. *See, e.g.*, *Muskevitsch-Otto ex rel. Toney v. Otto*, 635 N.W.2d 611, 614 (Wis. Ct. App. 2001); *Arents v. Gen. Acc. Ins. Co.*, 655 A.2d 936, 938–39 (N.J. Super. App. Div. 1995); *Travelers Ins. Co. v. Mixon*, 162 S.E.2d 830, 831 (Ga. Ct. App. 1968). Nevertheless, courts

in other states have at least indicated the possibility that a person is limited to being considered a resident of only one household. *See Smith v. Auto-Owners Ins. Co.*, 660 S.E.2d 271, 273 (S.C. Ct. App. 2008) ("[W]e do not reach the issue of whether an insured may reside in multiple households.").

Oklahoma law is somewhat murky on the issue. While the Tenth Circuit applying Oklahoma law has held that a person may be a resident of more than one household, *State Farm Mut. Auto. Ins. Co. v. Holloway*, 423 F.2d 1281, 1283 (10th Cir. 1970), the Court is not aware of a case from an Oklahoma state court specifically addressing this issue.[2] One case, however, suggests that it is possible that the Supreme Court of Oklahoma would not permit a person to be a resident of more than one household. In *Henderson v. Eaves*, 516 P.2d 270 (Okla. 1973), the Supreme Court of Oklahoma described several cases from other states without analyzing or expressly endorsing any of them. As part of that discussion, the court noted that in one case a Michigan court held that the term "resident of household" in an insurance policy "as applied to the facts of that case, did not include a relative who is a part of another household." *Id.* at 274. If "resident of household" does not include a relative who is part of *another* household, the implication is that a person may be a resident of only one household.

There are several reasons why this statement in *Henderson* is likely not controlling in this case, or at all. This was only one of several definitions the *Henderson* court discussed and the court

---

[2] In a different context, the Supreme Court of Oklahoma has stated that "natural persons are generally thought to have but one residence." *State ex rel. Cartwright v. Hillcrest Invests, Ltd.*, 630 P.2d 1253, 1258 (Okla. 1981). Aside from the distinguishable context, it appears that in that case the court was using the term "residence" as a synonym for "domicile," which is actually a separate concept. Furthermore, *Cartwright* did not involve the residency of a minor. Thus, *Cartwright* does not help determine the issues in this case.

did not expressly approve any of them. Instead, the court passively noted how a court in another state had ruled. It is entirely unclear whether the *Henderson* court based its decision on the ground that one may never be considered to reside in more than household rather than some other cited definition. Also, the *Henderson* court noted that the Michigan court's holding was limited "to the facts of that case." *Id.* at 274. Indeed, the cited Michigan case was actually further limited to where the relative "is a part of another household *and a resident of a foreign country.*" *Stadelmann v. Glen Falls Ins. Co. of Glen Falls*, 147 N.W.2d 460, 463 (Mich. Ct. App. 1967) (emphasis added).

Even if *Henderson* could be read to bar a person from being considered to reside in more than one household, it is possible that this rule does not apply to minors. *See, e.g.*, *McGlothlin v. Steinmetz*, 751 N.W.2d 75, 82, 84 (Minn. 2008) (noting that a minor may be a resident of more than one household but declining to address whether this holding could be expanded to adults). Notably, *Henderson* did not involve the residency of a minor. 516 P.2d at 273 (noting that the defendant was "an adult"). Indeed, if *Henderson* bars an unemancipated minors with divorced parents from being considered to reside in both parents' households, it is unclear why the *Shelter* court could "not foreclose the possibility that unemancipated minors with divorced parents may maintain a residence at both parents' homes under Oklahoma law." 330 P.3d at 1234. Nevertheless, as part of its second certified question, the Court notes the possibility that there are no circumstances under which a person may be considered to reside in more than one household under Oklahoma law.

As noted *supra*, there is a middle ground between the two extremes of a minor child always or never being considered to reside in both parents' households. If Oklahoma law allows unemancipated minors of divorced parents to be considered to reside in both parents' households (either because it generally allows a person to be considered to reside in more than one household

10

or because it at least allows an exception for unemancipated minors), the determination might be subject to the same standard for determining whether an adult resides in a household under Oklahoma law. Some states appear to follow this approach. *E.g.*, *Am. Family Mut. Ins. Co. v. Thiem*, 503 N.W.2d 789, 790–91  (Minn. 1993) (holding that unemancipated minor was resident of both parents' households because factors for determining whether adult resides in a household under Minnesota law were met).[3]

Alternatively, the determination might be subject to a distinct standard applicable only in the context of unemancipated minors. *See, e.g.*, *Davis by Davis v. Md. Cas. Co.*, 76 N.C. App. 102, 106, 331 S.E.2d 744, 747 (N.C. Ct. App. 1985) (holding minor  resides in both parents' households so long as there exists "a continuing and substantially integrated family relationship" between the minor and each parent); *Garrison by Garrison v. Travelers Ins. Co.*, 618 A.2d 387, 389 (N.J. Super. Ct. Ch. Div. 1992) (listing factors including: "the age of the child at the time of the accident, (the younger the child the greater the chances it will be a resident of both households); whether the parent had reasonable visitation rights; whether the parent was current in child support; whether the parent and child have a good relationship; and whether the child had a bedroom or separate wardrobe at the non-custodial parent's house"). Again, the Court has not found any controlling authority on this novel question of Oklahoma law.

GEICO cites *Horn v. Government Employees Insurance Co.*, 86 F. App'x 405 (10th Cir. 2004), for the proposition that certification is unnecessary because the Tenth Circuit did not invoke

---

[3] In *Henderson*, the Supreme Court of Oklahoma described standards from various courts of other states, without expressly endorsing any. 516 P.2d at 274. If a general standard applies to unemancipated minors with divorced parents, the Court respectfully requests that the Supreme Court of Oklahoma clarify which of these various cited standards should be treated as authoritative. The Court's second certified question encompasses this request.

Oklahoma's certification procedure in that case even though it involved similar policy language. Whether one court invoked Oklahoma's certification procedure in a specific case—especially one where it does not appear any party moved for certification—is irrelevant to whether this Court should do so here. Furthermore, *Horn* did not address whether a minor resided in a parent's household. Instead, the issue was whether the named insured's adult brother-in-law was a "resident" of the named insured's household. *Id.* at 407. The court held that the plaintiff failed to create a genuine issue of material fact that he resided in his brother-in-law's household. *Id.* at 408. Thus, *Horn* is inapplicable to the questions before this court: whether Oklahoma law recognizes a special *per se* rule for unemancipated minors with regard to their parents and, if not, under what circumstances a minor would be considered to reside in both divorced parents' households. Also, *Horn* is not a decision of the Supreme Court of Oklahoma or the Oklahoma Court of Criminal Appeals.

In short, this case presents novel, unsettled, determinative questions of Oklahoma law, which this Court has the power to certify and the Supreme Court of Oklahoma has the power to answer. The answers to the questions before the court vary from state to state, and sometimes are based on public policy or peculiarities of state law. This Court is an "'outsider[]'lacking the common exposure to [Oklahoma] law which comes from sitting in the jurisdiction." *Schein*, 416 U.S. at 391. While federal courts "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks," *Pino*, 507 F.3d at 1236, the circumstances of this case make certification appropriate.

### III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Meghan McCaul's Motion to Certify Question of Law (DE 50) is **GRANTED**. The Court, however, will rephrase the

question as proposed by McCaul and add a second question. The Court respectfully **CERTIFIES**

the following questions to the Supreme Court of Oklahoma for further instruction:

> 1. For the purpose of an insurance policy defining a "relative" as "a person related to you who resides in your household," is an unemancipated minor with divorced parents considered *per se* to reside in both parents' households?

> 2. If the answer to the first certified question is "no," under what circumstances, if any, would an unemancipated minor with divorced parents be considered to reside in both parents' households?

The Court's phrasing of the certified questions is not meant to limit how the Supreme Court of

Oklahoma analyzes the relevant issues and responds to the questions in light of the record in this

case. To assist the Supreme Court of Oklahoma in considering the questions, the Clerk is directed

to **TRANSMIT** the entire record in this case to the Supreme Court of Oklahoma. It is further

**ORDERED AND ADJUDGED** that this case shall be **STAYED** pending a response from the

Supreme Court of Oklahoma. The Clerk shall **ADMINISTRATIVELY CLOSE** this case.

   **DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida,

this 18th day of July, 2016.

KENNETH A. MARRA
United States District Judge

13